CARNES, Circuit Judge,
concurring:
I concur in the Court’s conclusion that the search conducted in this case violated the plaintiffs Fourth Amendment rights, but I do not join in all that is said about that issue in the majority opinion.
There was a Fourth Amendment violation in this case because the scope of the law enforcement intrusion exceeded that which is permissible during an administrative search alone. What happened in this case was more of a full scale raid and the kind of prolonged, top to bottom search that requires a warrant than it was an administrative search to determine compliance with laws applicable to a closely regulated business. See Swint v. City of Wadley, Ala., 51 F.3d 988, 998-99 (11th Cir.1995).
The reason I cannot join the majority opinion is its hand-wringing dicta suggesting that otherwise valid administrative searches may not be permissible if there is too much basis for suspecting that evidence of a crime will be found during the search. The theme of Part III of the majority opinion seems to be that when it comes to administrative searches a little suspicion is okay, but a lot is not. To the contrary, I tend to think that this is one area covered by Mae West’s observation that: “Too much of a good thing is wonderful.” The more reason to believe a crime has been committed, the better.
The notion that the permissibility of an administrative search varies inversely with the reason to believe that the search will uncover evidence of a crime defies logic and finds no support in the law. It is illogical because the more basis for believing a crime has been committed and that evidence of it can be found, the more justification there is for the search. In the area of searches probable cause is a positive factor, not a negative one; a plus, not a minus.
The Supreme Court was presented with an issue of this type in United States v. Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), which involved a warrantless search by customs officers of a large sailboat anchored in a shipping channel. Id. at 580-81, 103 S.Ct. at 2575. The search was conducted pursuant to a statute allowing the officers to board and inspect the vessel’s manifest and documentation. Id. One of the de *1251 fendant’s contentions was that the search was not motivated by concern about the vessel’s paperwork, but instead grew out of an informant’s tip that a ship loaded with marijuana would be coming through that channel. Id. at 584 n. 3, 103 S.Ct. at 2577 n. 3. For that reason, the customs officers were accompanied by a state law enforcement officer.
In their appeal from convictions for various crimes relating to the importation of marijuana, the defendants in Villamonte-Marquez argued that the evidence of drugs found on board should be suppressed, “because the Customs officers were accompanied by a Louisiana State Policeman, and were following an informant’s tip that a vessel in the ship channel was thought to be carrying marijuana, they may not rely on the statute authorizing boarding for inspection of the vessel’s documentation.” Id. In rejecting that argument, which closely parallels the majority’s dicta in this case, the Supreme Court explained:
This line of reasoning was rejected in a similar situation in Scott v. United States, 436 U.S. 128, 135-39, 98 S.Ct. 1717, 1722-24, 56 L.Ed.2d 168 (1978), and we again reject it. Acceptance of respondent’s argument would lead to the incongruous result criticized by Judge Campbell in his opinion in United States v. Arra, 630 F.2d 836, 846 (1st Cir.1980): “We would see little logic in sanctioning such examinations of ordinary, unsus-pect vessels but forbidding them in the case of suspected smugglers.”

Id.

The “incongruous result” rejected by the Supreme Court in Villamonte-Marquez is the same one that would flow from ruling out administrative searches of regulated businesses that are motivated by suspicion rising to the level of probable cause to believe there is criminal activity afoot. To borrow the words that the Supreme Court borrowed in explaining its Villamonte-Marquez decision, “We would see little logic in sanctioning such examinations of ordinary, unsuspect [auto salvage businesses] but forbidding them in the case of suspected [chop shops].” Id. (quotation omitted).
The Fifth Circuit’s decision in United States v. Thomas, 973 F.2d 1152 (5th Cir.1992), is similar to our case, and there the court relied on Villamonte-Marquez to hold that a public safety investigator’s search of an auto salvage yard pursuant to an administrative search statute did not violate the Fourth Amendment. Id. at 1155-56. The investigator searched the business after' tracking a salvage vehicle there. Id. at 1155. During the search, the officer inspected other vehicles on the lot and seized one along with some' VIN plates. As a result of that and other evidence which flowed from it the defendant was convicted on fourteen counts of trafficking in vehicles with falsified identification numbers. Id.
The defendant in Thomas argued on appeal that the search of his business violated the Fourth Amendment since it was not a valid administrative search because it was not conducted as part of a scheme of periodic and frequent inspections, but instead was intended to gather information about specific vehicles. Id. In rejecting that argument the Fifth Circuit explained that, “[administrative searches conducted pursuant to valid statutory schemes do not violate the Constitution simply because of the existence of a specific suspicion of wrongdoing.” Id. at 1155-56.
Also helpful is the decision in United States v. Nechy, 827 F.2d 1161, 1167 (7th Cir.1987), which rejected the argument that an administrative search of a pharmacy was unconstitutional because it was motivated by suspicion that the pharmacist was engaged in criminal activity and a *1252 desire to build a case against him. As the Seventh Circuit explained, “it does rather turn the Fourth Amendment on its head to complain about not the dearth but the plethora of grounds for believing that a pharmacy that is to be inspected is involved in criminal activity.” Id.
Our own closest decision to the issue is Crosby v. Paulk, 187 F.3d 1339 (11th Cir.1999), which involved a 28 U.S.C. § 1983 action that the owners and manager of a nightclub brought against a sheriff, a drug task force commander, and a state revenue agent, claiming a violation of the Fourth Amendment. Id. at 1344. The defendants had received numerous complaints about underage drinking at that and an adjoining nightclub owned by the plaintiffs. Id. at 1324. They knew those two clubs were among the most serious violators of underage drinking laws in the area, and there was enough evidence of those violations that the defendants had already obtained arrest warrants for the clubs’ owners and manager. Id.
The defendants teamed up to carry out an operation involving about forty law enforcement officers, which had two purposes: conducting an administrative search to see if underage and Sunday alcohol sales were still occurring, and executing the arrest warrants that had been obtained for past violations. Id. at 1343. Inside the premises, the officers detained approximately 400 patrons and required them to prove their age.' Id. They checked business records and inspected equipment. Id. The search lasted about two hours and resulted in fifty-four convictions for underage drinking. Id.
As part of their § 1983 lawsuit the plaintiffs claimed that the administrative search was per se unreasonable under the Fourth Amendment. Id. at 1345. We disagreed. Id. at 1348. In doing so we specifically rejected the plaintiffs argument that since the search had been planned in advance, the officers should have used the available time to obtain a search warrant. Id. We said, among other things, that “[i]t is not our role to tell local governments how to conduct an administrative search to enforce the Georgia Alcoholic Beverage Code as to underage and Sunday alcohol sales.” Id.
In rejecting the argument in Crosby that the administrative search was improper because the officers could have obtained a search warrant, we did not quarrel with the premise that the officers had enough time and the evidentiary basis to obtain one. Given the facts of that case it is clear that there was probable cause aplenty for a search warrant. See id. at 1342-43. Still, we upheld the administrative search. Id. at 1348. Our Crosby decision refutes the proposition that administrative searches may not be conducted if there is enough probable cause for a search warrant.
In the face of our own Crosby decision and the Supreme Court’s decision in Villa-monte-Marquez, as well as the Fifth and Seventh Circuit decisions, the primary decision that the majority relies on for its counterintuitive concern that too much evidence of criminality (“at some level of suspicion,” Maj. Op. at 1241) will defeat an otherwise permissible search is United States v. Johnson, 408 F.3d 1313 (10th Cir.2005). Maj. Op. at 1241. To begin with, a holding from another circuit cannot undermine the' holdings from our own circuit and the Supreme Court, that we have discussed.
Not only that, but the Tenth Circuit did not hold in Johnson that a high level of suspicion, or even probable cause, to believe that specific criminal conduct has occurred rules out an administrative search and requires a warrant. The language from the Johnson opinion that the majority cites for its own dicta favoring that *1253 proposition is not a holding, but is itself dicta. It is dicta because the Tenth Circuit in Johnson actually upheld the administrative search in that case. 408 F.3d at 1315, 1321-22. It is dicta because the facts of the Johnson case did not even rise to the level of direct criminal suspicion, much less probable cause. Id. at 1321 (“This is not the case here. Here, officers did not have ‘direct criminal suspicion’ about [the defendant] or [the auto salvage yard].”).
Even if the Tenth Circuit’s statement in Johnson were the law of that circuit, our Crosby decision shows that it is not the law of this circuit. And the Supreme Court’s decision in Villamonte-Marquez shows that it ought not be the law anywhere. Adopting the proposition that more suspicion means less administrative search authority would, as the Supreme Court explained, lead to the incongruous result of encouraging searches of businesses not suspected of illegal conduct while discouraging searches of those that are suspected of crimes. There is enough illogie in life without promoting it in the law.